**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PATRICIA T. KLEIN,

               Plaintiff,

                                                                            Case No. 8:15-cv-1022-T-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Patricia T. Klein ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "[m]igraines, hemicrania continua, depression, [and] fibromyalgia[.]" Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed August 10, 2015, at 215 (emphasis omitted). On May 18, 2011, Plaintiff filed an application for DIB, alleging an onset disability date of March 5, 2010.[2] Tr. at 177-84. At some point early in the administrative process, the alleged onset date was changed to August 27, 2010, Tr. at 76; see Tr. at 13, and Plaintiff confirms to this Court that the alleged onset date is August 27, 2010, see Plaintiff's Memorandum - Social Security (Doc. No. 15; "Pl.'s Mem."), filed November 12, 2015, at 1 (citation omitted). Plaintiff's

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 9), filed August 10, 2015; Reference Order (Doc. No. 11), entered August 11, 2015.

[2] The summary of the DIB application that is contained in the administrative transcript is dated June 4, 2011 but states that the application was completed on May 18, 2011. Tr. at 177.

application was denied initially, see Tr. at 76-89, 90, 108-12, and upon reconsideration, see Tr. at 91, 92-106, 107, 116-20.

On May 10, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 27-59. On July 24, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claim. Tr. at 13-21. Plaintiff then requested review by the Appeals Council, Tr. at 8, and submitted a brief in support of her request, Tr. at 5-6 (Appeals Council's order and exhibit list), 282-89 (brief). On March 11, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On April 29, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal. The first issue is whether the ALJ erred in "fail[ing] to evaluate Plaintiff's well documented migraine headaches at step 3, and, in particular, failed to evaluate them in light of Listing 11.03." Pl.'s Mem. at 8 (emphasis omitted). The second issue is whether the ALJ erred in "omitt[ing from the residual functional capacity ("RFC")] Plaintiff's headache related work limitations[.]" Id. at 11 (emphasis omitted).[3] On January 14, 2016, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem."). Then, with leave of Court, Plaintiff on February 3, 2016 filed Plaintiff's Reply Brief - Social Security (Doc. No. 23; "Reply"). After a thorough review of the entire record and consideration of the parties'

---

[3] There is a third part of the argument section of Plaintiff's Memorandum (actually appearing prior to the two issues raised) that discusses the evidence of record, including the opinion of Plaintiff's treating physician, regarding Plaintiff's migraine headaches. See Pl.'s Mem. at 3-7. Plaintiff does not raise any specific points of alleged error in this section. See id.

respective filings, the undersigned finds that the Commissioner's final decision is due to be affirmed for the following reasons.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 15-20. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since August 27, 2010, the alleged onset date." Tr. at 15 (emphasis and citations omitted). At step two, the ALJ found Plaintiff "has the following severe impairments: headaches; fibromyalgia/chronic fatigue syndrome; depression; and, anxiety." Tr. at 15 (emphasis and citations omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairments in 20 CFR Part 404, Subpart P, Appendix 1 [("Listings")]." Tr. at 15 (emphasis and citations omitted).

The ALJ determined Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b), except she cannot climb ladders, ropes, scaffolds, ramps or stairs. [Plaintiff] must avoid all exposure to hazardous and vibrating machinery, and she cannot drive. Finally, [Plaintiff] is limited to low stress work (i.e., object-focused work that is not on a production line).

Tr. at 17 (emphasis omitted). At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a court clerk, cashier, legal assistant, and rental agent." Tr. at 19 (emphasis omitted). Because of this step four finding, the ALJ did not proceed to step five. See Tr. at 19-20. The ALJ concluded that Plaintiff "has not been under a disability . . . from August 27, 2010 through the date of th[e D]ecision." Tr. at 20 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire

record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

For ease of discussion, the undersigned addresses the issues in reverse order.

### A. RFC Assessment

Plaintiff contends the ALJ erred in assessing the RFC because, according to Plaintiff, the ALJ "omitted Plaintiff's headache related work limitations[.]" Pl.'s Mem. at 11 (emphasis omitted); see also Reply at 3-4.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)). Nevertheless, "the ALJ need not include 'each and

every symptom' of the claimant's impairments, or medical 'findings . . . that the ALJ had properly rejected as unsupported.'" Luterman v. Comm'r of Soc. Sec., 518 F. App'x 683, 690 (11th Cir. 2013) (quoting Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1270 (11th Cir. 2007); Crawford, 363 F.3d at 1161).

Here, the ALJ discussed in detail the medical evidence regarding Plaintiff's headaches, Tr. at 18-19, and assigned an RFC that accounted for Plaintiff's headaches to the extent he found Plaintiff's allegations to be supported by the evidence, Tr. at 17. In discussing the medical evidence, the ALJ wrote:

> The medical evidence indicates that [Plaintiff's] primary care provider has been Shahina Ja[v]eed, M.D. Dr. Ja[v]eed's handwritten, check-the-box treatment notes offer little support. The doctor noted complaints of migraine headache pain in 2010, though complaints as to severity are varied. For instance, in March 2011 [Plaintiff] was apparently feeling ok. In December 2011, [Plaintiff] was again feeling ok, and the main issue she complained of was weight gain from Effexor (prescribed . . . for depression). In March 2012 [Plaintiff's] issue was depression, not headaches, and in June 2012 Dr. Ja[v]eed offered just a handwritten reference to "aches and pains." [Plaintiff] was doing ok again in October 2012, and in early March 2013 her main issue was diarrhea and stomach flu symptoms. It was not until late March 2013 that Dr. Ja[v]eed noted another instance of migraine headache complaints, which represents quite a period since the earlier instance.
>
> With regard to migraine headache issues, there are also treatment records from neurologist Vikram Atit, M.D. Dr. Atit noted complaints of migraine headache pain in March 2010, as well as numbness in the upper extremities. Fortunately for [Plaintiff], a nerve conduction velocity study ruled out any form of neuropathy. Dr. Atit ultimately settled on a treatment regimen of Topamax, and by May 2010 [Plaintiff] admitted she was receiving some benefit from the Topamax. Dr. Atit noted the same thing in June 2010. The [ALJ] concedes the point that, at the time of the alleged onset date of disability, [Plaintiff] was again complaining of excruciating headache pain. Yet, [Plaintiff] sought little follow-up care with Dr. Atit after she says she was no longer able to work. As noted one paragraph above, the primary care provider records from Dr. Ja[v]eed also show variable, waxing/waning symptoms. Even an April 2011 report from Tampa General Hospital references the fact that [Plaintiff's] headaches used to be daily, but were now two to three times each month. The evidence does not dispute the presence of a medically determinable, severe headache impairment. Yet, this treatment evidence belies [Plaintiff's] allegations of

> chronic, disabling pain. [Plaintiff] remains capable of light work, with accommodations for low stress work only and other nonexertional limitations.

Tr. at 18 (citations omitted). The ALJ further recognized that Dr. Javeed submitted a RFC questionnaire that would result in precluding all work, to a degree based on Plaintiff's migraine headaches. Tr. at 19 (citing Ex. 13F, which is Tr. at 523-27); see Tr. at 523-27 (March 21, 2013 RFC questionnaire in which Dr. Javeed opined, among other things, that Plaintiff suffered from "severe headaches on a daily basis," and Plaintiff is "[i]ncapable of even 'low stress' jobs" because "any stress causes headaches"). The ALJ, however, rejected Dr. Javeed's opinion on the questionnaire, stating "for the reasons noted above this medical source statement is inconsistent with Dr. Javeed's own limited, handwritten notes and the records from other, specialized sources." Tr. at 19 (emphasis omitted).[5]

The ALJ's findings regarding Plaintiff's migraine headaches are supported by substantial evidence. The ALJ for the most part accurately summarized the relevant records from Dr. Javeed, which are hand-written and very difficult to read. See Tr. at 432 (1/8/2010 note indicating Plaintiff had migraine headaches); Tr. at 431 (4/20/2010 note indicating Plaintiff had headaches in the left frontal lobe and was taking Topomax but still having headaches); Tr. at 430 (5/11/2010 note indicating Plaintiff had involuntary weight loss, had left-sided "headaches all day long" and was seeing Dr. Atit); Tr. at 429, 506 (duplicate) (3/4/2011 note indicating Plaintiff had migraines and she was being referred for botox from a neurologist at USF); Tr. at 428, 505 (duplicate) (6/3/2011 note indicating Plaintiff had headaches and prescribing Depokate); Tr. at 504 (12/13/2011 note indicating Plaintiff had migraines and stating something about Botox); Tr. at 503 (3/13/2012 note not appearing to

---

[5] Although Plaintiff refers to Dr. Javeed's opinion, Plaintiff does not specifically challenge the ALJ's assessment of the opinion. See Pl.'s Mem. at 3-4.

mention migraines); Tr. at 502 (3/21/2012 note not appearing to mention migraines and indicating Plaintiff "feels ok"); Tr. at 501 (6/14/2012 note indicating Plaintiff had migraines); Tr. at 521 (10/4/2012 note indicating Plaintiff had migraines); Tr. at 520 (3/1/2013 note not appearing to mention migraines); Tr. at 519 (3/21/2013 note indicating Plaintiff had severe migraines and was to follow up with a neurologist).

Further, the ALJ correctly observed that although Dr. Atit's notes reflect Plaintiff had severe headache issues until about the time of her alleged onset disability date (August 27, 2010), after that date, she sought little if any follow-up care with Dr. Atit. See Tr. at 546-47 (3/5/2010 letter to Dr. Javeed stating Plaintiff had "three attacks" in the last month that were excruciating, up from "two or three headaches a year" in the past; starting Plaintiff on Topamax and Maxalt-MLT p.r.n.; and indicating that Dr. Atit performed nerve blocks to help with relieving Plaintiff's then-current headache); Tr. at 544 (3/23/2010 note indicating that Plaintiff's "headaches are somewhat better since [Dr. Atit] ha[s] seen her" but "[s]he still has headaches on the left side, fairly frequently"); Tr. at 543 (4/4/2010 note indicating that Plaintiff's "headaches are getting better every time [Dr. Atit] see[s] her"); Tr. at 542 (4/26/2010 note indicating that Plaintiff's "[h]eadaches were getting better, but now she says they have started occurring daily again"); Tr. at 541 (5/10/2010 note indicating that "[t]he headaches are still daily, still bothering her considerably" and Dr. Atit "ha[s] really not been able to find a way to help her"); Tr. at 540 (5/31/2010 note documenting that "[t]he headaches are a lot better" and went from daily to occasionally); Tr. at 539 (6/29/2010 note documenting "headaches overall are lot better than they used to be, but she is still getting the head pain, some soreness of the scalp" and "occipital nerve blocks have not helped");

Tr. at 538 (8/5/2010 note documenting excruciating pain from migraines that would not resolve with her normal medication and extreme sensitivity to pain; Dr. Atit sent Plaintiff to the emergency room for treatment[6]); Tr. at 537 (8/10/2010 note stating Plaintiff's headache was not fully resolved; pain is lingering 1-2/10 and increases with stress; on Topomax and just started Depakote).[7] There are no notes from Dr. Atit in the administrative transcript post-dating the August 27, 2010 alleged onset date.

Finally, the ALJ correctly observed that in April 2011, when Plaintiff presented for a follow-up visit at the headache clinic of Tampa General Hospital, she reported less intense

---

[6]   See also Tr. at 391-401 (emergency room records).

[7]   Notes from Plaintiff's rheumatologist, Mohammed S. Mughni, M.D., mostly dated prior to the August 27, 2010 alleged onset disability date, document similar varying degrees of intensity and persistence. See Tr. at 316 (5/7/2010 note indicating "[p]ersistent migraine headaches"); Tr. at 312 (5/28/2010 note indicating Plaintiff was "[c]omplaining of increasing headaches" but a review of systems revealed "[n]o headaches, s[ie]zures or weakness"); Tr. at 308, 311 (7/30/2010 note indicating Plaintiff was "[c]omplaining of increasing headaches" and was taking "Topamax for headaches" but a review of systems revealed "[n]o headaches, s[ie]zures or weakness"); Tr. at 304, 307 (8/20/2010 note indicating a review of systems revealed "[n]o headaches, s[ei]zures or weakness" and Plaintiff should "check with a neurologist," as she was "already on Depakote and topamax"); Tr. at 300, 303 (9/27/2010 note indicating a review of systems revealed "[n]o headaches, s[ei]zures or weakness" and Plaintiff was taking "Indocin for headaches"); Tr. at 296, 298 (12/27/2010 note indicating a review of systems revealed "[n]o headaches, seizures or weakness" and Plaintiff was taking "Indocin for headaches"); Tr. at 293-94 (5/2/2011 note indicating Plaintiff "continues to complain of recurrent headaches" and "[t]he pain is moderate to severe in intensity, aching in quality, worse with activity and local pressure" with "[p]artial response to medications" that included "Indomethacin p.r.n. for headaches").

There is also a note dated August 30, 2010 (just three days after the alleged onset date) from Community Hospital reflecting that Plaintiff was admitted for migraine headaches and fibromyalgia. Tr. at 403. Upon admission, Plaintiff was quoted as stating: "all I get is medications, which has been depressing me." Tr. at 403 (purportedly quoting Plaintiff); see Tr. at 406. Plaintiff was "complain[ing] of worsening of headaches and multiple pain discomfort worsening since February of this year." Tr. at 403. It was noted that Plaintiff "ha[d] been receiving various medications to manage this and has had problems such as side effects or lack of efficacy." Tr. at 403. Yanira Olaya, M.D. prescribed continued Depakote for migraines, Tr. at 405, and Plaintiff was discharged September 3, 2010, Tr. at 406.

Finally, notes from the Florida Arthritis and Osteoporosis Center, dated well after the alleged onset disability date, again reflect varying degrees of intensity and persistence. See Tr. at 534 (4/9/2012 note stating Plaintiff has ""[m]igraine headaches" and she is "[i]ntolerant to pain medications"); Tr. at 532 (7/23/2012 note stating Plaintiff has "[m]igraine headaches" and she is "[i]ntolerant to pain medications"); Tr. at 530 (12/3/2012 note stating Plaintiff "continues to have intermittent headaches" with "[p]artial response to medications" but was "in no significant pain or distress" on examination).

-9-

symptoms and that the frequency of the headaches decreased significantly.[8]  Tr. at 18. Specifically, Plaintiff reported to Maria-Carmen B. Wilson, M.D. that "Indocin helped to decrease the intensity of her baseline headaches, which was previously 8/10 to 3/10."  Tr. at 380.  Dr. Wilson noted that "[s]he continues to have escalations, but now they are more tolerable about 8/10 from 10/10 previously."  Tr. at 380.  At the time, Plaintiff was taking Indocin and Depakote for headaches.  Tr. at 380.  According to Dr. Wilson, the "[f]requency of her migraines also decreased, they were previously daily, now it is 2-3 times per month."  Tr. at 380.  Dr. Wilson diagnosed "[m]igraine without aura."  Tr. at 381.

In short, the ALJ appropriately reviewed the medical evidence pertaining to Plaintiff's migraine headaches, and the ALJ's findings and conclusions regarding the intensity and severity of the headaches are supported by substantial evidence in the record. Nevertheless, the ALJ recognized that Plaintiff's headaches can affect her ability to perform work-related functions, and he accounted for the headaches— to the extent he found the evidence supported allegations of them— in the RFC.  Specifically, the ALJ stated Plaintiff must "avoid all exposure to hazardous and vibrating machinery, and she cannot drive."  Tr. at 17 (emphasis omitted).  The ALJ also accepted Plaintiff's contention that stress can set off the migraines, limiting Plaintiff "to low stress work (i.e., object-focused work that is not on a production line)."  Tr. at 17 (emphasis omitted).  These findings are supported by substantial evidence and need not be disturbed.

---

[8]    Plaintiff had initially been seen by Jennifer D. Nuss, M.D. at New Port Richey Hospital on April 17, 2011.  Tr. at 384.  Plaintiff presented that day complaining of migraines and a pain level of ten.  Tr. at 384, 390.  Plaintiff had taken Maxalt twice that day with no relief.  Tr. at 384.  Dr. Nuss prescribed Sumatriptan.  Tr. at 390.

**B. Listing 11.03**

Plaintiff contends erred in "fail[ing] to provide any substantive discussion regarding Listing 11.03." Pl.'s Mem. at 8; see also Reply at 1-3. Plaintiff argues that the ALJ was obligated to discuss Listing 11.03 in light of the evidence regarding her migraine headaches because, while there is no Listing to address only migraine headaches, Listing 11.03 (addressing epilepsy) is the most closely analogous Listing that would apply to chronic migraine headaches. Pl.'s Mem. at 8-10.

At step three of the sequential evaluation process, the burden rests on the claimant to prove the existence of a listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

"Listing 11.03, which addresses non-convulsive epilepsy, requires detailed documentation of seizures that occur more frequently than once a week, in spite of at least three months of prescribed treatment." Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03). The Listing also requires a showing of "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03). Moreover, the

introductory paragraph to section 11.00 provides, "under . . . 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

In surveying cases addressing similar issues, Mann v. Colvin, 100 F. Supp. 3d 710 (N.D. Iowa 2015) is instructive. In Mann, the court held that the ALJ erred by failing to specifically consider Listing 11.03 in light of the evidence of plaintiff's chronic, severe migraine headaches. See Mann, 100 F. Supp. 3d at 719-21 (also collecting other district court cases "discuss[ing] Listing 11.03 in connection with migraine headaches"). The migraine headaches at issue in Mann lasted several days and had resulted in emergency room visits at least ten times in the three years prior to the ALJ's decision in that matter. Id. at 720-22. During the same period, the plaintiff was also being treated by non-emergency doctors, including a neurologist. Id. at 720. The court therefore found "sufficient evidence of chronic, severe migraine headaches during the relevant period of time" that reversal and remand was required for the ALJ to "consider whether that impairment medically equals Listing 11.03." Id.

The ALJ here evaluated the evidence and found at step three that no listings were met or equaled. Tr. at 15. As discussed in detail in section IV.A., supra, the evidence of Plaintiff's migraines in this case is less compelling than the evidence present in Mann. Namely, although Plaintiff here did see a specialist for her headaches, she stopped following up with him right around the time of the alleged onset disability date; Plaintiff's headaches improved over time in both frequency and intensity (with medication); and Plaintiff did not visit the emergency room anywhere close to the number of times that the plaintiff in Mann did. See Mann, 100 F. Supp. 3d at 720-22. Although the ALJ here did not mention Listing

11.03 specifically, given the circumstances, the ALJ was not required to cite and discuss Listing 11.03 in the Decision.  See Prince v. Comm'r, Soc. Sec. Admin., 551 F. App'x 967, 971 (11th Cir. 2014) (citing Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (finding "meritless" an argument that an ALJ was required to "make detailed findings or explicitly discuss whether her impairments met or equaled [a specific Listing]" because "the ALJ's conclusion that [the claimant] did not meet that specific listing can be implied from the ALJ's discussion of [the claimant's] medical evidence . . . and his general conclusion that [the claimant] did not meet any medical listing"); Gray ex rel. Whymss v. Comm'r of Soc. Sec., 454 F. App'x 748, 750 (11th Cir. 2011) (citation omitted) (stating that "[a]lthough the ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination," and "[a] finding that a claimant's impairments are not contained in the Listings may be implied from the ALJ's decision").  Upon review of the record as a whole, the ALJ reasonably concluded based on the evidence that Plaintiff did not meet or medically equal any of the Listings, and the ALJ's step three finding is supported by substantial evidence.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the Commissioner's final decision is supported by substantial evidence.  Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

    2.       The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 29, 2016.

_____<br>
JAMES R. KLINDT<br>
United States Magistrate Judge

kaw
copies:
counsel of record